SEP 29 2021 PM 3:06
FILED-USDC-CT-HARTFORD

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

### CIVIL RIGHTS COMPLAINT

Jehovah's Witness

Richard T. Parmlee ,

Plaintiff(s),

(Full name(s); Do not use *et al.*)

v.

Office of the Attorney

General, and Dept.

of Revenue Services

both Connecticut State Agencies, and

For names see list of Players

_____

_____

Defendant(s).

(Full name(s) and capacity, *e.g.*, official capacity, individual capacity,
or official and individual capacitites) (Do not use *et al.*)

Case No. 3:21-cv-1294

(To be supplied
by the court)

## A. PARTIES

1. Richard T Parmlee, Sr. is a citizen of Connecticut who

(Plaintiff)          (State)

presently resides at P.O.Box 261438  Hartford, CT 06126-1438 .

(mailing address)

2. Defendant Attorney Generals Office is a citizen of Connecticut

(name of first defendant)          (State)

whose address is 55 Elm Street Hartford, CT 06106 ,

and who is employed as Assistant Attorneys for the State of CT. .

(title and place of employment)

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law?   X   Yes   _____ No.  If your answer is "Yes," briefly explain:

Defendant was acting as defense counsel for the Department of Revenue Services, and who conspired to violate an agreement ordered by

Judge Covello on August 25, 1994. Which members of the Attorney General's Office altered the content of the agreement.

3.  Defendant   Department of Revenue Services   is a citizen of   Connecticut
      (name of second defendant)                                                                    (State)

whose address is   450 Columbus Blvd, Suite 1 Hartford, CT 06103

and who is employed as   State's Tax Department   .
      (title and place of employment)

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law?   X   Yes   _____ No.  If your answer is "Yes," briefly explain:

Defendants acts for Race discrimination was brought before Judge Covello who ordered defendant not to return without a settlement.

On August 25, 1994 plaintiff signed an agreement in his attorney's office, no defendant were present. see Forgery complaint attached.

(If more space is needed to furnish the above information for additional defendants, continue on a blank sheet which you should label "A. PARTIES."  Be sure to include each defendant's complete address and title.)

## B. JURISDICTION

1.  Jurisdiction is asserted pursuant to (CHECK ONE)

_____ XX _____        42 U.S.C. § 1983 (applies to state defendants)

_____        ***Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics***, 403 U.S. 388 (1971) and 28 U.S.C. § 1331 (applies to federal defendants)

2.  Jurisdiction also is invoked pursuant to 28 U.S.C. § 1343(a)(3).  (If you wish to assert jurisdiction under different or additional statutes, you may list them below.)

Title VII, 1964 and addidtional statutes are cited in the supporting documentation provided.

### C. NATURE OF THE CASE

**BRIEFLY** state the background of your case.

Nature of case is about a criminal and
Civil Conspiracy label " B causes of actions"
Attached

### D. CAUSE OF ACTION

I allege that the following of my constitutional rights, privileges, or immunities have been
violated and that the following facts form the basis of my allegations:  (If more space is needed
to explain any allegation or to list additional supporting facts, continue on a blank sheet which
you should label "D.  CAUSE OF ACTION.")

**Claim I:** Also, See Brief labeled D" Cause of Action

Supporting Facts:  (Include all facts you consider important, including names of persons
involved, places, and dates.  Describe exactly how each defendant is involved.  State the facts
clearly in your own words without citing legal authority or argument.)

3

**Claim II:** _____

_____

_____

Supporting Facts:

**Claim III:** _this third "C. Cause of Action" is about_
_the forgery that the other cases are_
_concealing. see Attached_

Supporting Facts:

4

## E. REQUEST FOR RELIEF

I request the following relief:

## F. JURY DEMAND

Do you wish to have a jury trial? Yes ☒          No _____

_____          _____
Original signature of attorney (if any)          **Plaintiff's Original Signature**

_____          _____
Printed Name_____Printed Name

_____          _____

_____          _____

( )          ( )
Attorney's full address and telephone          Plaintiff's full address and telephone

_____          _____
Email address if available          Email address if available

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct.  28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at _____ Main St HRD CT_____ on _Sept 29 2021_.
(location)                              (date)

_____
**Plaintiff's Original Signature**

(Rev. 3/21/16)

5

## "B CAUSE OF ACTION"

Conspiracy—Civil Liability

There was a request for a motion to reopened and set-a-side the judgement to the Honorable Holly B. Fitzsimmons, a United States Magistrate Judge. This Judge joined with all the attorneys of record mentioned in a prior complaint dated August 25, 1994, naming the parties they represented in connection with other complainants against DRS for continuing acts conspiracy. There are other complainants including wrongful termination on September 16, 1997, Race and Religious discrimination and retaliation filed on June 3, 1999, and concealment all these acts transpired in bad faith to prevent their duty to honor the settlement agreement entered with plaintiff prior to the date mentioned above.

Was there evidence of a civil conspiracy against plaintiff and is the conspiracy ongoing? Answer: Yes

The ongoing conspiracy deals with the non-payment of child support monies ($110,000.00) that should have been given to Mr. Parmlee to secure that debt according to the settlement agreement. Yet, the only payment made was the forty thousand ($40,000) dollars was given to plaintiff for him and his Attorney. By the one payment of forty thousand made to Mr. Parmlee and his attorney (Anthony Ball) demonstrated that DRS

23

and co-conspirators had foreknowledge of a duty owed under a
contract to be fulfill. They also knew that by not paying or
refusing to pay the other amount (One Hundred Ten Thousand) that
was also required, would cause the plaintiff to suffer the loss
of non-payment of back child support that still has to be paid.
By and co-conspirators negligence failed to honor the duty owned
under the contractual terms entered into by the parties to the
settlement agreement on August 25, 1994.

Again, the breach of agreement, and these new results from
the prior complaints gave Mr. Parmlee reasons to file other
complaints with the continuous overt acts that was in
furtherance of the conspiracy followed by the wrongful
termination on September 16, 1997. Although, the Union held
hearings without Mr. Parmlee's knowledge or presence, that shows
there was some form of collusion or deal on the part of the
Union not to inform Mr. Parmlee of the outcome. Yet, DRS used
management and supervisors who had knowledge of the wrongful
acts and decided that even though Mr. Parmlee had to be
reinstatement would not learn the true outcome of the union's
decision. Because Mr. Parmlee was not present, no record or
information above the true representation could be identified
which is the key to the fraud that was being committed. Just
that DRS stated to Mr. Parmlee that the termination was changed

into a suspension with no mention of back pay, Mr. Parmlee learned that; Attorney for the State of Connecticut; Joan C. G. Gear, Assistant Attorney General, F. Hoeniger, (Attorney/employee for DRS) and AFSCME Clerical Union; Attorney Jason Cohen, for J. William Gagne & Associates, P. C., were those in attendance at this conference.

Therefore, on October 26, 1998, Mr. Parmlee was reinstated to his employment but reassigned in a location and division in furtherance of the ongoing conspiracy to breach the dishonored settlement agreement. DRS and the co-conspirators from the attorney general's office knew that Mr. Parmlee's would refuse to comply with the unlawful demands as planned by management would give them an excuse to terminating Mr. Parmlee's employment. Which lead to the second wrongful termination beginning with suspension, telling Mr. Parmlee to go home and order him back into a meeting on May 4, 1998. DRS management was planning to hold a meeting and threatened Mr. Parmlee with termination if he refused to give justice cause for refusing to follow unlawful orders made by management in the new division. Mr. Parmlee knew that DRS management was not listening to his concerns regarding the settlement agreement and knew why DRS management were making these unlawful demands on him which created a hostile work environment. So, Mr. Parmlee refused a

25

final unlawful order to enter the meeting while on suspension
and DRS sent a letter terminating his employment for refusing to
obey a direct order made by DRS management.

Finally, Mr. Parmlee was terminated again on May 5, 1999,
for refusing an unlawful demand by other management in DRS not
related to the Audit Division which was another overt act to
prevent Mr. Parmlee from any means of economic recovery to
obtain any legal representation on my behalf. There were other
overt acts, such as to change venue from Hartford to Bridgeport,
and making sure that only Magistrate Fitzsimmons received any
filings made by Mr. Parmlee, therefore, any filings as of June
3, 1999, went to this judge complaint to prevent any relief
allowing other acts of ongoing conspiracies to deny Mr.
Parmlee's his Constitutional right to a fair trial to dated…

### Did DRS engage in a conspiracy?

A civil conspiracy is a combination of two or more persons
to accomplish an unlawful purpose, or to accomplish a lawful
purpose by unlawful means. It is a legal doctrine under which
liability for a tort may be imposed on people who did not
actually commit a tort themselves but who shared a common plan
for its commission with the actual perpetrators. The character
and effect of a conspiracy are not to be judge by dissecting it
and viewing its separate parts but only by examining it. The

26

component parts however cannot be ignored. The extent and
duration of a conspiracy are necessarily dependent on the facts
of each case. A continuing conspiracy contemplates a series of
overt acts. A person who attempts to procure the participation
of others in a conspiracy may be liable for attempting to
conspire.  There is a distinction in the law of conspiracy as
applied in civil and criminal cases.

The difference between a civil conspiracy and a criminal
conspiracy, is that in criminal conspiracy, the agreement or
conspiracy is the gravamen of the offense, but civil actions,
the conspiracy is not the essence of the charge. A criminal-
conspiracy charge seeks to punish the agreement itself while the
purpose of a civil conspiracy is to impute liability. A civil
conspiracy is said to exist for only two purposes: to implicate
others and to increase the measure of damages. §15-A Conspiracy—
Civil Liability C.J.S. §1.

There may be two variants of a cause of action for civil
conspiracy: (**1**) "true conspiracy," which requires a plaintiff to
prove that concerted action gave the defendants a peculiar power
of coercion over the plaintiff, enabling them to bring about
results different in kind from what any of them could achieve
individually, but does not require proof of any other tortious
act, and (**2**) a concerted-action version that extends liability

for the underlying tortious conduct to those who assist or encourage others to commit the tort. The assistance or encouragement should be "substantial," with knowledge that such assistance is contributing to a common tortious plan. Coercion is not required. The determination of liability for a claim of civil conspiracy alleging assistance of encouragement of tortious conduct will be based on the same factors used to determine causation in a case of negligence. §15-A True conspiracy" or concerted action C.J.S. § 2

The resolve for recommending the motion to reopen was the ongoing civil conspiracy in relation to the "Breach of contract" (see issue regarding elements for a contract); with intent to defraud, "Forgery and violation of Civil Rights." that was discussed with Magistrate Fitzsimmons in that conference. These "Material facts" would be disclose in a further investigation regarding these allegations. Damages also arrived from the violations mentioned herein this claim.

*Richard Sandler, Sr.*

*Sept 29, 2021*

28

## "C CAUSE OF ACTION"

**Forgery**

**Elements of Forgery**

I. Issue

Was there a contractual relationship in the form of a settlement agreement between Plaintiff and DRS that was entered into on August 25, 1994, in which the Attorney Generals were representing DRS?

Were any parts of the settlement agreement altered constituting forgery? Answer Yes.

II. Rule

Forgery may generally be defined as the false making or materially altering, with intent to defraud, of any writing, which, if genuine might apparently be of legal efficacy, or the foundation of a legal liability. Another definition states that forgery is a false making of an instrument, on its face purporting to be good and valid, with a design to defraud, prejudice, or damage another. While it is true that there is a distinction between fraud and forgery, forgery contains some elements that are not included in fraud, forgeries are a species

of fraud. The crime of forgery only applies to documents that could affect another person's legal rights.

   "Forgery" consists either in the false making or alteration of a document without authority or the uttering, making use, of such a document with the intent to defraud. Forgery by false making and forgery by uttering are distinct species of forgery, are not mutually exclusive and often are committed seriatim; each offense can be completed without any reference to the other. 37 Forgery West's A.L.R. Digest key §1. Here it can be found that the reason a document was created in Attorney Ball's Office was to identify the interest of Mr. Parmlee by making sure the form of the document was legal. Therefore, the drafting of the settlement agreement by Mr. Parmlee and Anthony Ball was at Attorney's office then, located at 26 N. Main St West Hartford, CT on August 25, 1994. This document spelled out the terms and conditions that made the agreement final. On the last page (7) of that document only contained spaces for two signatures, one for Mr. Parmlee's and the other was for the Then Commissioner of DRS. Even though Mr. Parmlee's attorney refused to grant him a signed copy with his (Attorney Ball's) signature until, "as he stated," the attorney generals checked it out first. So, he gave the settlement agreement to the attorney generals for their approval.

Some months later another document was shown Mr. Parmlee by DRS's management that worded different than the settlement agreement he was familiar. That document did not highlight or covered Mr. Parmlee's terms that was spelled out in the agreement drafted in Attorney Ball's office. 37 Forgery West's A.L.R. Digest key §3, 4; 11 A.L.R. 3d 1074. The court should investigate to compare the authenticity of the instrument and question the parties as to how and why these egregious acts were accomplished.

**(1)  Was there a false making or other alteration of some instrument in writing?** Ans: Yes.

The essential elements of forgery are a false making or other alteration of some instrument in writing, a fraudulent intent, and an instrument apparently capable of effecting a fraud. §1 Definition and nature of offense of forgery, 37 West's A.L.R. Digest key 1, 3 to 5.

Shortly after the drafting of the settlement agreement by Mr. Parmlee and Anthony Ball, at Attorney's office then, as mentioned above on August 25, 1994. Our document spelled out the terms and conditions. Mr. Parmlee's attorney refused to grant him a signed copy with his (Attorney Ball's) signature until, "as he stated," the attorney generals checked it out first. So, after giving the agreement to the attorney generals, Mr. Parmlee

31

was shown an instrument that worded different than the
settlement agreement by DRS's management which he was not
familiar. That document did not highlight or covered Mr.
Parmlee's terms spelled out in the document drafted in Attorney
Ball's office. This was a material alteration of an existing
instrument with intent to defraud, Mr. Parmlee, as the law
states, "is forgery." Which such alteration made have had the
effect it intended. In addition, the law states, that forgery
may be accomplished by adding to or subtracting from the
instrument, such as erasing or deleting words, numbers, or
symbols that change the instrument's effect. Similarly, several
areas of the instrument were changed to make it seem like DRS
was aware of Mr. Parmlee's interest but, DRS demonstrated they
were not obligated to comply with that interest.

Likewise, the law states, that any change made in the date of
an instrument, in the amount, the name of a party to, or in the
subject matter of an instrument with intent to prejudice the
rights of another is sufficient to constitute the offense.
However, being that the attorney generals created the changes
with the approval of DRS management, we can infer that both
parties were conspiring to make changes to that original
document. This became clear after Attorney Ball stated that he
would provide a copy after the attorney generals had an

32

opportunity to review the agreement. 37 Forgery West's A.L.R. Digest key §3, 4; 11 A.L.R. 3d 1074. It is clear, in order that an alteration may constitute forgery it is essential that it be material.

A material alteration of an instrument within the meaning of the rule is one which makes it speak a language different in legal effect from that which it originally spoke, or which carries with it some change in the rights, interests, or obligations of the parties to the writing. 37 Forgery West's A.L.R. Digest key §9. Now, due to the time and effort spent to make changes, denying full performance clearly shows Mr. Parmlee and the court that with a different document filed from that which was part of a conspiracy provides evidence that the document in question is a forgery. The court should examine the contents of the two documents to learn which document makes sense as to the authenticity that is governed by law to be authenticated and to the benefit of Mr. Parmlee.

**(2) Was there fraudulent intent?**

An intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over that person or to induce that person to part with property or alter that person's position by some false statement or false representation of fact, wrongful concealment, or suppression of

33

the truth or by any artifice or act designed to deceive. 37
Forgery West's A.L.R. Digest key §4. Other authority states that
only schemes to prejudice, damage, or defraud persons as to
their legal rights, generally money or property, are within the
ambit of forgery, notwithstanding that there may have been an
intent to deceive, there is no crime of forgery unless the
making of an instrument is accompanied by an intent to defraud—
there must be a potential benefit to the maker or potential
injury to the defrauded party. 37 Forgery West's A.L.R. Digest
key §4. Here the document used showed Mr. Parmlee that by
attorney Ball refusing to give him a copy of the agreement with
his signature on it, was by designed, and that a scheme to give
advantage to DRS and (other co-conspirators) attorney generals
allowed them to alter Mr. Parmlee's signed document. This
demonstrated that DRS was aware and having guilty knowledge of
Mr. Parmlee's interest of becoming a revenue examiner for the
agency. Although, the altered document passed to DRS's
management made no reference to the other payment being made for
Mr. Parmlee's back child support. This was intentional scheme,
to use the non-payment of child support against Mr. Parmlee in
an ongoing criminal enterprise to defraud Mr. Parmlee and the
Court. Which was the direct cause to the injury Mr. Parmlee's
personal property taken by intentional, reckless, and total
disregard for the foreseeable harm that was done to Mr. Parmlee,

causing his suffer by denying his constitutionally protected rights over some twenty years of his life through that altered document. Apparently, that is why the document did not contain the same information in Mr. Parmlee's drafted settlement agreement, because it could show that all this was done at different times and still constitutes forgery. 37 Forgery West's A.L.R. Digest key §3.

Obviously, a document was submitted to the court on August 29, 1994, having the signatures of the two attorney generals and Anthony Ball on the front cover of the altered instrument and the signature only, and on last page of Mr. Parmlee's settlement agreement demonstrated that the altered instrument was intended to deceive Mr. Parmlee, and the United States District Court, claiming legal efficacy by filing with the court as the authenticated document as acceptance of the contracting parties to the agreement. This material fact is also omitted.

Although, Mr. Parmlee was never given a signed copy of the document filed with the court, helps to explains why DRS breached the agreement and committed other egregious acts by DRS and conspirators who obtain power over Mr. Parmlee. Nevertheless, these overt ongoing acts will also explain that the co-conspirators had knowledge of the falsehood of the document and knew that by not paying or giving Mr. Parmlee the

35

one hundred ten thousand ($110,000.00) dollars was one of the intended acts DRS and the Attorney generals had a duty owed and to pay. By their refusal to make the one hundred ten thousand ($110,000) dollar payment was the direct and approximate cause of Mr. Parmlee's harm resulting in damages. Moreover, other law would explain that "evidence of the advantage by the instrument, if genuine, would have given has been obtained, or that the injury which such an instrument to inflict has been accomplished, sufficiently shows an intent to defraud." 37 Forgery West's A.L.R. Digest key §69.

The defendant's actual receipt of a benefit from an allegedly forged document is not required as element of forgery; only the defendant's "objective" to cause a particular result through deception is relevant. An intent to defraud, as an element of forgery, is broad enough to include an intent to deceive for reasons other than pecuniary gain and may exist where property rights are not involved. 37 Forgery West's A.L.R. Digest key §4.

**(3) Was the instrument evidently capable of effecting a fraud?**

A document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties may be legally efficacious, for purposes of forgery. The determination of whether a noncommercial document purports to have legal efficacy, so as to support a forgery conviction, is a

two-step injury: first the court must determine whether the document is required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties, and second, the court must determine whether the document is an instrument which upon its face could be made the foundation of liability and is also an instrument good and valid for the purpose for which it was created. Courts determine whether a noncommercial document has legal efficacy, to support a forgery conviction, by examining the nature of the document, any legal functions it may serve, and any legal obligations it may impose. As we fine here, when the document is examined by the court, and compared with (Plaintiff's Exhibit F) the document prepared by Mr. Parmlee and his attorney. 37 Forgery West's A.L.R. Digest key §6.

   III. Analysis

   It can be proven through examination of the document that the material advantage was to hide the terms of plaintiff's settlement agreement to avoid payment of the hundred and ten thousand dollars. This was by design to commit other overt acts which caused Mr. Parmlee; first, wrongfully garnish Mr. Parmlee's wages to the amount of one hundred dollars per paycheck, the use of Bridgeport's support enforcement agency, and Superior Court to falsely imprison Mr. Parmlee for non-

payment of the same back child-support that would have been paid had the attorney general's office forwarded the check to Mr. Parmlee to secure payment. Also, further investigation will reveal that the document filed with the court by the attorney generals knew they intentionally planning these events knowing the outcome, and by continuing their schemes to play out these fraudulent acts to date with wanton disregard that the false or altered instrument has affected a fraud were with the same and others individuals from the Attorney General's office who represented DRS to further their scheme which included using other agencies in this conspiracy to assist them in their efforts to commit this and other egregious acts against Mr. Parmlee. These acts were the actual cause of Mr. Parmlee non-payment of back-child support, false imprisonment for that non-payment of back child-support, and wrongful termination of employment, denied unemployment compensation, which should result in the reinstatement as part of recovery in damages. 37 Forgery West's A.L.R. Digest key §3.

Uttering is the offering of a forged instrument, knowing it to be such, whether such offer is accepted or not, with a representation, by words or actions, that it is genuine, and with an intent to defraud, and it is an offense under statutes so providing. In this sense the words utter and publish have

38

nearly the same meaning, and the two words have been held to be
synonymous as used in a forgery statute. The uttering of an
instrument which is not a forgery is of course not within the
definition, and hence it is essential that the instrument should
possess some apparent legal efficacy, as otherwise it would have
no tendency to defraud. It is not essential that accused should
have been in any way implicated in the forgery, and it is
immaterial whether the instrument was forged by accused or by
another person. The offense is complete when a false instrument
is offered by one knowing it is forged with representations by
word or action that it is genuine, and it is not essential that
the instrument be accepted as genuine, that it be indorsed, or
that anyone be prejudiced by it.

The passing and uttering of a forged instrument are not a
separated offense from that of causing an instrument to be
uttered and passed. Now, here it also can be shown that this
false document was passed from the attorney generals to DRS
management and to the filing clerk at the United States District
Court makes the passing of the false instrument complete. 37
Forgery West's A.L.R. Digest key §30 Uttering, passing, or
publishing forged instruments, generally.

In Conclusion, all the acts committed against Mr. Parmlee
by those who participated in the conspiracies did so knowingly,

recklessly, and intentionally without any regard for the outcome yet, foreseeable results before, during or afterward, which plans were made with the Attorney Generals that involved DRS, Judges on both state and federal levels of government, including Magistrate Holly B. Fitzsimmons, the Second Court of Appeals along with other state agencies in the effort to complete the criminal enterprise which violates the R.I.C.O. statutes, to denied Mr. Parmlee's Constitutional Rights denied all his cases from being tried in court both on state and federal levels. In addition, involved in the blacklisting of Mr. Parmlee which prevented him from finding gainful employment even after obtaining his bachelor's and master's Degrees in Legal Studies and interfered with his test score results after taking the LSAT on several occasions and completing law school. Making sure that Mr. Parmlee has no opportunity to get moneys from any resources that would allow him the ability to hire legal counsel to assist him in his efforts to resolve his legal issues. Also, other efforts through blacklisting are preventing Mr. Parmlee from affording housing, and child support to deny the opportunity to determine if the child Mr. Parmlee is paying for his legal obligation through DNA testing. Which the Superior court is using to try, and force Mr. Parmlee to pay for back child-support for a made-up income which Mr. Parmlee does not have due to him being disabled collecting his military pension, and the

mother of the child is already receiving child-support, which she knows is not Mr. Parmlee's. The court is allowing the (Lorna Shipp) mother in another overt act of conspiracy, to extortion money for back support as an enjoining party to an ongoing criminal enterprise to prevent Mr. Parmlee from obtaining, renting, or leasing property. Damages can be assessed from the above information mentioned herein as in all the other charges identified regarding the allegations claimed.

Robert Parmlee, Sr.

Sept 29, 2021