**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JEHOVAH'S WITNESS | : | CIVIL ACTION NO. 3:21-CV-01294(MPS) |
| RICHARD T. PARMLEE | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| OFFICE OF THE ATTORNEY GENERAL | : | |
| and DEPT. OF REVENUE SERVICES | : | |
| D*efendant* | : | DECEMBER  27, 2021 |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      **INTRODUCTION** ................................................................................1

II.      **BACKGROUND** ................................................................................2

III.    **PLAINTIFF'S** ALLEGATIONS ........................................................8

IV.     **STANDARDS ON MOTION TO DISMISS** .....................................10

    A.      **STANDARD ON MOTION TO DISMISS UNDER FED. R. P. 12(b)(1)** ......10

    B.      **STANDARD ON MOTION TO DISMISS UNDER FED. R. P. 12(b)(6)** ......11

V.      **ARGUMENT** ....................................................................................13

    A.      **COURT LACKS SUBJECT MATTER JURISDICTION** .............................13

        i.      **THE DOCTRINE OF RES JUDICATA BARS PLAINTIFF'S TITLE VII CLAIMS AGAINST DRS** ....................................13

        ii.     **COLLATERAL ESTOPPEL BARS RELITIGATION OF ISSUES PREVIOUSLY LITIGATED IN THE CONSOLIDATED ACTION** ..............................................17

        iii.    **STATUTE OF LIMITATIONS** ....................................................19

            a.      **ALLEGATIONS FALL LARGELY OUTSIDE THE APPLICABLE STATUTES OF LIMITATIONS** ...................19

            b.      **PLAINTIFF'S §1983 CLAIMS PRIOR TO SEPTEMBER 29, 2018 ARE TIME BARRED** ......................22

       iv.    **THE ELEVENTH AMENDMENT SOVEREIGN IMMUNITY BARS THE §1983 CLAIMS AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITY** ........................................**24**

       v.    **"MEMBERS" OF THE OAG ARE ENTITLED TO ABSOLUTE QUASI-JUDICIAL IMMUNITY** .................................**27**

  **B.**    **PLAINTIFF FAILED TO STATE ANY CLAIMS UPON WHICH RELIEF MAY GRANTED** ........................................**29**

       i    **PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AS TO THE BREACH OF CONTRACT/SETTLEMENT AGREEMENT** ...........................**29**

       ii    **SUPPLEMENTAL STATE LAW CLAIMS** ...............................**31**

       iii    **PLAINTIFF'S REQUEST FOR A JURY TRIAL REGARDING HIS CLAIM FOR EQUITABLE RELIEF MUST BE DISMISSED BECAUSE HE HAS NO RIGHT TO A JURY TRIAL FOR EQUITABLE RELIEF UNDER TITLE VII.** ................................**32**

**VI.**   **<u>CONCLUSION</u>** ........................................**33**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEHOVAH'S WITNESS | : | CIVIL ACTION NO. 3:21-CV-01294(MPS) |
| RICHARD T. PARMLEE | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| OFFICE OF THE ATTORNEY GENERAL | : | |
| and DEPT. OF REVENUE SERVICES | : | |
| *Defendants* | : | DECEMBER  27, 2021 |

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO DISMISS

## I.   INTRODUCTION

Defendants State of Connecticut Office of the Attorney General ("OAG") and Dept. of Revenue Services ("DRS") hereby submit this memorandum of law in support of their Motion to Dismiss.

Plaintiff Jehovah's Witness Richard T. Parmlee (hereinafter "Plaintiff") filed this complaint on September 29, 2021, pursuant to 42 U.S.C. §1983, 28 U.S.C. §1343(a)(3), Title VII, and "additional statutes as cited in the supporting documentation provided, which appears to include "§15-A Conspiracy Civil Liability C.J.S.[1] §1," and  "§15-A True conspiracy or concerted action C.J.S. §2"  seeks monetary damages as well as reinstatement of his employment with the State of Connecticut.  (Complaint, §B,2, pgs. 2, 27 & 28). Plaintiff alleges claims of racial discrimination, conspiracy, forgery, and fraud.[2]  (Complaint)

For the reasons set forth below, Defendants move to dismiss the entire Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds:

---

[1]    Plaintiff cites to C.J.S, which is Corpus Juris Secondum, a legal encyclopedia and a secondary source.
[2]    Plaintiff does not plead his claims in a count order.

1.      Plaintiff's Title VII claims are barred by doctrine of *res judicata*.

2.      Plaintiff is collaterally estopped from relitigating issues previously litigated in the First/Second consolidated lawsuit.

3.      42 U.S.C. § 1983 has a 3-year statute of limitation and thus Plaintiff's alleged adverse employment actions that occurred prior to September 29, 2018 are time-barred.

4.      The Eleventh Amendment bars 42 U.S.C. § 1983 claims against state defendants.

5.      "Members" of the OAG are entitled to quasi-judicial immunity.

6.      Plaintiff failed to exhaust his administrative remedies with the Claims Commissioner.

7.      The Court decline supplemental jurisdiction on the state law claims.

8.      Plaintiff's request for a jury trial regarding his claim for equitable relief must be dismissed because he has no right to a jury trial for equitable relief under Title VII.

## II.   <u>BACKGROUND</u>

Plaintiff began working for DRS in February 1987.  *Parmlee v. State of Connecticut Dept. of Revenue Services*, 160 F. Supp. 2d 284, 296 (2001).  On December 14, 1990, while employed with DRS, plaintiff filed his first lawsuit against DRS claiming "color, race, religion, and sex discrimination and retaliation in his failure to be promoted within DRS."  Id. *citing to Parmlee v. State of Connecticut Dept. of Revenue Services*, Civil Docket No.2:90-cv-00125. Between September 16, 1991 and August 23, 1994, the Court handled various motions for extension of time and withdrawals of plaintiff's *Pro bono* counsel.  Id.

2

On August 23,1994, trial commenced but was then continued until August 24, 1994. *Parmlee v. State of Connecticut Dept. of Revenue Services*, Civil Docket No.2:90-cv-00125. On August 29, 1994, the parties filed a Motion for stipulated final judgment and "ultimately resolved" this lawsuit. Id. (Docket Entry Nos. 44, 45); *See Parmlee v. State of Connecticut Dept. of Revenue Services*, 160 F. Supp. 2d 284, 296 (2001) *citing to Parmlee*, No. OLR 07-4107, slip op. at 3. In granting the Motion for stipulated final judgment, the Court entered judgment and closed the case. *Parmlee v. State of Connecticut Dept. of Revenue Services*, Civil Docket No.2:90-cv-00125 (Docket Entry Nos. 46, 47).

On November 3, 1995, plaintiff filed a Motion to Reopen the case and for a revised stipulated judgment. *Parmlee v. State of Connecticut Dept. of Revenue Services*, Civil Docket No.2:90-cv-00125 (Docket Entry No. 50). On November 30, 1995, the Court denied plaintiff's Motion to Reopen the case and denied plaintiff's request for a revised stipulated judgment. *Parmlee v. State of Connecticut Dept. of Revenue Services*, Civil Docket No.2:90-cv-00125 (Docket Entry No. 51). On January 29, 1996, the Court granted plaintiff's request to review sealed files. Id. (Docket Entry No. 52).

On September 16, 1997, three years after settlement of the first lawsuit, plaintiff was "discharged by DRS for insubordination and offensive and abusive conduct toward his coworkers" *Parmlee v. State of Connecticut Dept. of Revenue Services*, 160 F. Supp. 2d 284, 296 (2001). Subsequently, the matter "went to arbitration and the arbitrator found on September 28, 1998, that [t]here was not just cause for dismissal of [Parmlee]." Id. (internal quotations omitted.) Plaintiff was reinstated to his position without back pay. Id. On October 29, 1998, plaintiff was reinstated to his former position at DRS." Id. On May 4, 1999, DRS "terminated

his employment a second time" because of "insubordination toward his supervisors and coworkers." Id.

On October 13, 1998, plaintiff filed another lawsuit, under Title VII and the Age Discrimination on Employment Act ("ADEA"), against several defendants including the DRS and the OAG "seeking money damages, injunctive relief, back pay, and reinstatement of employment with DRS." *See Parmlee v. State of Connecticut Department of Revenue Services*, *et al,* 160 F.Supp.2d 294, 296-297 (2001). Prior to the filing of this lawsuit, the plaintiff filed a complaint with the Commission on Human Rights and Opportunities ("CHRO") and a charge with the federal Equal Employment Opportunity Office ("EEOC"). On March 24, 1998, the CHRO dismissed his complaint on the basis that the complaint "is not likely to show that [DRS] failed to promote, harassed, terminated, and retaliated against [him] on the basis of [his] ancestry, religion, and previous opposition of [DRS's] discriminatory practices." Id. The EEOC closed his file because "it adopted the findings of the CHRO and gave [plaintiff] the right to sue letter on July 9, 1998." Id.

On April 8, 1999, the court (Nevas, J) "dismissed this complaint without prejudice." Id. It was dismissed because it "failed to state a claim for relief under Title VII on the basis that individual employees could not be held personally liable under Title VII and that liability under Title VII is limited to employers." Id. On April 13, 1999, Judge Nevas granted DRS's Motion to Dismiss. Id. On April 20, 1999, the matter was referred to Magistrate Fitzsimmons. Dk. No. 61.

Meanwhile, on June 4, 1999, plaintiff filed a Motion to Reopen the first lawsuit, and set aside order denying reconsideration of the judgment, which entered because of the August 1994 settlement agreement. *Parmlee v. State of Connecticut Dept. of Revenue Services*, Civil Docket

No.2:90-cv-00125. (Docket Entry No. 53).  On July 27, 1999, the Court denied plaintiff's

Motion to Reopen case and denied his Motion to set aside order denying reconsideration of the

judgment (Covello, J).  Id.

Subsequently, on August 25, 1999, plaintiff filed "two amended complaints" to the

complaint he had originally filed on October 13, 1998. *Parmlee v. State of Connecticut Dept. of

Revenue Services*, 160 F. Supp. 2d 284, 297 (2001).  With the filing of one of the amended

complaints, the Court reopened the case that was closed on July 8, 1999.  *See Parmlee v. State of

Connecticut Dept. of Revenue Services*, Civil Docket No.3:98-cv-02021 (HBF) (Docket Entry

No. 72). In response, defendants filed Motions to Dismiss both amended complaints.  *Parmlee v.

State of Connecticut Dept. of Revenue Services*, 160 F. Supp. 2d 284, 297 (2001).

On October 22, 1999, by order of the Court, all defendants except for DRS, were

"voluntarily dismissed."  Id.  On December 22, 1999, plaintiff filed a motion for summary

judgment, which defendants opposed.  Id.  Prior to ruling on the Motion to Dismiss in this case

against DRS, plaintiff filed "an additional claim" with the CHRO and EEOC claiming that he

was "a victim of unlawful employment discrimination because of [his] sex (male), race

(Cherokee), color (black), religion (Jehovah's witness), National origin (Native American), and

age (47)".  *Id.* at 297-298.  On July 27, 2000, the EEOC issued a dismissal and "right to sue

letter" and closed plaintiff's file "because after its investigation, it was unable to conclude that

allegations established violations of applicable statutes."  Id. at 298.

On October 27, 2000, the plaintiff filed a second complaint wherein he "sought money

damages, injunctive relief, back pay, and reinstatement of his former position with DRS."  Id.

Specifically, plaintiff claimed [DRS] discriminated against him based on his race, religion,

national origin, gender, age and color, terminating his employment, failing to promote him, retaliating against him for exposing DRS's unlawful practices."  Id.

In that decision on the Motion to Dismiss all defendants except for DRS, the Court also dismissed plaintiff's claims alleging "sex discrimination age discrimination, and claims of hostile work environment based on his race and religion were also dismissed." Id.  The only claims that remained viable against DRS were "[his] claims of race and religion discrimination based on disparate treatment and his retaliation claim."  Id.

On December 21, 2000, by agreement of the parties, the court consolidated the second complaint with the first.  Id. at 296, 298.  On February 15, 2001, DRS answered the consolidated complaint and filed a Motion for Summary Judgment as well. Id. at 298.   In *Parmlee v. State of Connecticut Department of Revenue Services*, et al (Doc. No. 3:98-cv-02021 (HBF), published as 160 F.Supp. 2d 294 (2001), the defendants sought summary judgment "on Parmlee's claims of discriminatory retaliation, disparate treatment and gender discrimination" under Title VII.  Id at 299.

On February 15, 2001, the defendant, DRS filed a Motion for Summary Judgment, "which addresses all of plaintiff's pending claims."  *See Parmlee v. State of Connecticut Department of Revenue Services*, et al, 160 F.Supp.2d 294, 296 (2001).  At the time DRS filed their Motion for Summary Judgment, the plaintiff's pending claims were of "discriminatory retaliation, disparate treatment, and gender discrimination" and "age discrimination."  Id at 299.

In deciding *Parmlee v. State of Connecticut Department of Revenue Services, et al* (Doc. No. 3:98-cv-02021 (HBF)), published as 160 F.Supp. 2d 294 (2001), the Court held that "the only proper defendant to [the] consolidated action is DRS."  Id. at 300.  Additionally, the Court found that "as an initial matter, all of Parmlee's allegations related to the 1994 settlement

agreement, such as his claims for fraud, conspiracy, forgery and breach of contract, fail to state a claim a claim under Title VII" and that "[e]ven if these allegations stated a viable claim under Title VII, the Court holds the claims are time-barred because the events giving rise to these claims occurred more than 300 days before Parmlee filed his claims with CHRO and EEOC." Id. In a footnote to its holding, the Court noted that "there is no evidence in the record before [it] that an exception to the statute of limitations would apply in this case." Id. at 306, Fn 7.

With regards to plaintiff's employment discrimination claim under Title VII, the Court held that he "failed to establish a *prima facie* case of employment discrimination because he has not shown that any of the adverse employment decisions occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in a protected class." Id. at 302. Therefore, defendants' motion for summary judgment was granted as to the plaintiff's "Title VII claim for disparate treatment based on gender, race, religion, national origin, and color discrimination." Id. at 304. In granting summary judgment, the court found that "defendants provided evidence that any adverse employment actions DRS took regarding [plaintiff] did not occur under circumstances giving rise to an inference of discrimination" and as a result, the plaintiff's Title VII claim for disparate treatment based on gender, race, religion, national origin, and color discrimination fails." Id.

With regards to plaintiff's retaliation claims under Title VII, the Court held that this claim also failed. Id. at 304-305. Plaintiff claimed that "defendants retaliated against him for exposing DRS's unlawful practices." Id. at 304. Plaintiff also claimed that DRS gave "false and derogatory references about [him] after he was fired." Id. However, the court found that the "defendants provided that no requests for references for Parmlee [had] been received by DRS and that all reference requests are sent to the Human Resource Department." Id. The Court

stated that plaintiff provided "no evidence that the employment decisions that followed close in time to the protected activity, that he was treated differently after [his] complaint, or that other similarly situated employees were treated more favorably after he engaged in the protected activity." Id. at 305. The Court further held that plaintiff's "remaining retaliation claims against DRS also failed." Id.

For the above stated reasons, on August 24, 2001, the Court granted defendant DRS's Motion for Summary Judgment. Id. at 306. On August 24, 2001, the Court closed this case. On September 7, 2001, plaintiff sought reconsideration of the August 24, 2001 court order granting summary judgment. *Parmlee v. State of Connecticut Department of Revenue Services*, et al (Doc. No. 3:98-cv-02021 (HBF) (Docket Entry No. 118). On October 4, 2001, the Court entered an endorsement denying plaintiff's Motion for Reconsideration. Id. (No Docket Entry Number). On October 9, 2001, plaintiff filed a Notice of Appeal. Id. (Docket Entry No. 119-120). On October 25, 2001, judgement for DRS was entered into the court record. Id. (Docket Entry No.121). On June 28, 2002, the 2nd Circuit Court of Appeals ("USCA") issued a mandate, dated June 22, 2002, affirming the judgment of this Court. Id. (Docket Entry No.123).

### III.   <u>PLAINTIFF'S ALLEGATIONS</u>

Plaintiff alleges that Office of the Attorney General ("OAG"), who represented the Defendant DRS "conspired to violate an agreement ordered by Judge Covello on August 25, 1994" and that "members of the [OAG] altered the content of the agreement." (Complaint, ¶2, pg.2). Plaintiff further alleges that his claims against DRS arose under color of state law when "Defendants acts for Race discrimination was brought before Judge Covello who ordered defendant not to return without a settlement." (Complaint, ¶3, pg.2). Additionally, he claimed

that "[o]n August 25, 1994, [he] signed an agreement in his attorney's office, no defendant were present."[3]  Id.

Plaintiff alleges ongoing conspiracy committed against him by DRS beginning in 1994 and other complaints "including wrongful termination on September 16, 1997, Race and Religious discrimination and retaliation filed on June 3, 1999, and concealment [of] all these acts transpired in bad faith to prevent their duty to honor the settlement agreement entered with plaintiff prior to the date mentioned above."  (Complaint, ¶1 pg.23).  Plaintiff further alleges that "On October 26, 1998, [he] was reinstated to his employment" only to be terminated a second time on "May 5, 1999."  (Complaint, pgs.25-26).

In addition to the civil conspiracy claims, Plaintiff alleges DRS committed forgery when they altered parts of the settlement agreement, which he entered with them in 1994.  (Complaint, pgs. 29-41).  Specifically, the Plaintiff alleges that he reviewed and signed a settlement agreement with his attorney while in his attorney's office.  Id at pg. 30.  He claims that his attorney would not give him a copy of the document he signed "until the attorney general's checked it out first" and it was approved by them.  Id.  Plaintiff alleges that "some months later," he was presented by "DRS management" with a document "worded different than the settlement agreement he was familiar."  Id. at 31.  Plaintiff alleges that the document DRS showed him had been materially altered from the document he signed in his attorney's office and that these material alterations amounted to forgery.  Id. at pg. 32.  He further alleges that the OAG "created the changes with the approval of DRS management," which allows him to "infer that both parties were conspiring to make changes to that original document," which he states his attorney gave the OAG to approve.  Id. at 32.  Plaintiff alleges his own attorney schemed "to give advantage to

---

[3]    Plaintiff cites to his Complaint.

DRS and (other co-conspirators) attorney generals allowed them to alter [his] signed document."
Id at 34.  He further claimed that this intentional forgery occurred when DRS became aware of
his interest in "becoming a revenue examiner for [DRS]."  Id.  Plaintiff also alleges that this
forgery scheme to "use the non-payment of child support against [him]."  Id.  Plaintiff alleges the
effect of this forgery was to cause him to "suffer by denying constitutionally protected rights
over some twenty years of his life."  Id. at 35.

Plaintiff claims that the forged document was "submitted to court on August 29, 1994."
Id.  Plaintiff claims that the forged document submitted to the court on August 29, 1994 allowed
DRS and the OAG to deprive him of "one hundred ten thousand ($110,000) dollars."  Id. at 36.
He alleges that the OAG & DRS conspired to commit fraud and forgery when they failed to
make the $110,000 payment and these acts "were the actual cause of [his] non-payment of back-
child support, false imprisonment for that non-payment of back child-support, wrongful
termination of employment, and denied employment."  Id. at pg. 38.  Additionally, plaintiff
alleges that the defendants were involved in blacklisting him to "[prevent] him from finding
gainful employment" and "interfered with his test score results after taking the LSAT on several
occasions and completing law school."  Id at 40.

## IV.   STANDARDS ON MOTION TO DISMISS

### A.   STANDARD ON MOTION TO DISMISS UNDER FED. R. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a District Court should dismiss an action or claim for lack
of subject matter jurisdiction "when the district court lacks the statutory or constitutional power
to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *accord Nowak v.
Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). The plaintiff generally
bears the burden to prove, by a preponderance of the evidence, that the court has subject matter

jurisdiction to entertain the plaintiff's claims. *Makarova*, 201 F.3d at 113; *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In adjudicating a motion to dismiss under Rule 12(b)(1), the court "accept[s] all of the plaintiff's factual allegations in the complaint as true and draw[s] inferences from those allegations in the light most favorable to the plaintiff." *Courtenay Communications Corp. v. Hall*, 334 F.3d 210, 213 (2d Cir. 2003). Lack of subject matter jurisdiction is never waived. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Issues relating to subject matter jurisdiction may be raised at any time, even [o]n appeal, and even by the court sua sponte. If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008), citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976).

## B. <u>STANDARD ON MOTION TO DISMISS UNDER FED. R. P. 12(b)(6)</u>

For a complaint to survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a plaintiff must plead enough facts to suggest a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 667-678, 129 S. Ct. 1937 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-558 (2007); Fed. R. Civ. P. 12(b)(6). To state a claim, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads <u>factual content</u> that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 566 U.S. at

678 (emphasis added). Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 678 (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

This standard applies to all civil actions. Id. at 684. The pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.at 678. General allegations of discrimination or simply tracking statutory language is therefore insufficient to properly raise a claim for relief. *Twombly*, 550 U.S. at 555*; Iqbal*, 566 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Accordingly, based on the Supreme Court's holding in *Iqbal* and *Twombly*, numerous courts have dismissed employment discrimination and other claims where, as here, the plaintiff has failed to state a "plausible" claim for relief. *See, e.g., Harris v. Mills*, 572 F.3d 66, 74 (2d Cir. 2009) (granting 12(b)(6) motion to dismiss holding that allegations did not state claim for failure to provide reasonable accommodation under the ADA); *Argeropoulos v. Exide Techs.,* No. 08-CV-3760 (JS), 2009 WL 2132443, at *5-6 (E.D.N.Y. July 8, 2009) (granting Rule 12(b)(6) motion to dismiss Title VII claims where plaintiff plead only two incidents that could arguably be considered national origin harassment and a "conclusory and entirely non-specific allegation that similar conduct occurred on a 'daily and continuous basis because he is Greek,'" and holding that "without more information concerning the kinds of anti-Greek animus directed against Plaintiff, and the frequency thereof, the Court cannot conclude that Plaintiff's claim is 'plausible'"); *Ansley v. Florida, Dept. of Revenue***,** No. 4:09cv161 (RH/WCS), 2009 WL 1973548, at *2 (N.D. Fla. Jul. 8, 2009) (granting Rule 12(b)(6) motion to dismiss Title VII and

other claims where "plaintiff comes to this battle 'armed with nothing more than conclusions,'"

alleging only that he was treated badly and eventually fired on a pretext, that the real reasons for

the poor treatment and firing included his gender and medical condition, and that similarly-

situated others were treated better; noting that "[t]hese allegations might have survived a motion

to dismiss prior to *Twombly* and *Iqbal*.  But now they do not.").

A complaint will not survive a motion to dismiss if it relies on "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements," or if "the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *See*

*e.g*., *Thompson v. Rizzitelli, et al.,* 2011 U.S. Dist. LEXIS 33060, at *7 (D. Conn. Mar. 29,

2011), *quoting Iqbal*, 129 S. Ct. at 1949-50.

## V.   ARGUMENT

### A.   COURT LACKS SUBJECT MATTER JURISDICTION

#### i.   THE DOCTRINE OF RES JUDICATA BARS PLAINTIFF'S TITLE VII CLAIMS AGAINST DRS

The Plaintiff pleads the same claims in this action as he did in previous lawsuits against

defendant DRS. Because judgment was entered against the Plaintiff back in 2001 a previous

lawsuit against DRS (filed on October 13, 1998 & October 27, 2000), after he had had a full

opportunity to litigate his claims on the merits, this complaint must be dismissed based on *res*

*judicata*.  To the extent that Plaintiff is seeking to raise or rely on these allegations in his current

action, he cannot do so because all these claims are barred by *res judicata*.

Under traditional principles of *res judicata*, or claim preclusion, a final judgment on the

merits of an action precludes parties from relitigating issues that were or could have been raised

in that action*.  Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Overview Books, LLC v. United States*,

438 Fed. App'x 31 (2d Cir. 2011)  It is well settled that "[w]hen there has been a 'final judgment

13

on the merits,' *res judicata* prevents a plaintiff in the initial case from bringing a second lawsuit against the same defendants arising from the same 'transaction, or series of connected transactions' in order to 'relitigat[e] issues that were or could have been raised' in the first case." *Boyd v. NYCTL 1996-1 Tr.*, No. 16-2404, 2017 WL 2589388, at *1 (2d Cir. June 15, 2017) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195-96 (2d Cir. 2010)). "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and *res judicata*, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . ..' Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)).

Generally, to successfully raise res judicata as a defense, a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the same parties, or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *Allen*, 449 U.S. at 94, 101 S. Ct. 411; *Burgos v. Hopkins,* 14 F.3d at 787, 789 (2d Cir. 1994); *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345–46 (2d Cir.1995); *Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir. 2000).

Here, plaintiff's prior actions from 1990, 1998, and 2000 were litigated and dismissed on summary judgment on August 23, 2001, thus judgment was entered against the plaintiff on the merits as to DRS. *See Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 349 (S.D.N.Y. 2012)("it must be noted that a judgment on the merits for purposes of res judicata is not necessarily a

judgment based upon a trial of contested facts; it may, for example, be a default judgment, a judgment on stipulation or agreement, **or a summary judgment**." (Citations and internal quotation marks omitted; emphasis added).  Plaintiff's prior actions from 1990, 1998, and 2000 were brought against seventy-one defendants including the OAG and DRS.  *Parmlee v. State of Connecticut Dept. of Revenue Services,* 160 F.Supp. 2d 294 (2001); *See also Parmlee v. Revenue Services*, et al, Civil Docket No. 3:98-cv-02021 (HBF).  The court, *sua ponte,* terminated all the other defendants, including the OAG, leaving DRS as the sole defendant.  *Parmlee v. State of Connecticut Dept. of Revenue Services,* 160 F.Supp. 2d 294,300 (2001).

In addition, the claims asserted in the prior actions from 1990, and the consolidated actions from 1998, and 2000 were actually litigated, or could have been litigated, in that First/Second consolidated Lawsuit. Specifically, the plaintiff claimed in consolidated action and subsequent appeal, as he does in this current action, that when DRS officials, terminated his employment in 1999, they discriminated against him based on based on gender, race, religion, national origin, and color."  *Id.* at 304. In the prior actions from 1990, and the consolidated actions from 1998, and 2000, as in the present complaint, the plaintiff sought both reversal of the termination and damages. After the plaintiff fully litigated these claims, the District Court rejected them when it granted summary judgment for the defendants.

Plaintiff had every opportunity to include in the consolidated actions from 1998 and 2000 the claims he makes in this complaint, which were not claimed in the consolidated actions from 1998 and 2000, including the alleged breach of agreement and interference with his law school test scores.  In fact, the Plaintiff filed an appeal of the dismissal of the consolidated actions from 1998, and 2000, which was denied.  *See also Parmlee v. Revenue Services*, et al, Civil Docket No. 3:98-cv-02021 (HBF) (Docket Entry No. 123).  Lastly, the consolidated actions from 1998,

and 2000 involve the same party.  Both the consolidated actions from 1998, and 2000 and the current action were filed against DRS[4].

In the instant complaint, the plaintiff is attempting to reargue the decision granting summary judgment against him in 2001, but "…(t)he fact that some different evidence may be presented in this action ..., however, does not defeat the bar of res judicata."  *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2335, 195 L. Ed. 2d 665 (2016), as revised (June 27, 2016) (internal quotations and citations omitted).  The plaintiff, thus, is precluded from litigating the same claim against the defendant DRS. This action, his Third Lawsuit, regarding his employment termination, conspiracy, forgery, breach of contract/agreement, and blacklisting should be dismissed under the doctrine of res judicata on that basis alone.

"This principle prevents a plaintiff from litigating claims that were *or could have been* raised in a prior action against the same defendant.' 'Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence.'" *Cieszkowska* v. *Gray Line New York*, 295 F.3d 204, 205-06 (2d Cir. 2002) (emphasis added, quoting *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 87-88 (2d Cir. 1999) (per curiam)).

While the Second Circuit has declined to rule on the issue of "whether a judgment based on an immunity defense is a judgment on the merits for the purposes of *res judicata," O'Connor* v. *Pierson*, 568 F.3d 64, 70 (2d Cir. 2009), several District Courts have so found.  In *McFarland v. United States*, Docket No. 18-CV-00988 (JFB) (AYS), 2018 U.S. Dist. LEXIS 236394, at *5 (E.D.N.Y. June 7, 2018), the District Court held that "Plaintiff's claims in [the plaintiff's first

---

[4]     On October 31, 2001, Defendant OAG was terminated from the First Lawsuit *Parmlee v. Revenue Services*, et al, Civil Docket No. 3:98-cv-02021 (HBF).

action] were dismissed based on sovereign immunity and such a dismissal is 'on the merits' for preclusion purposes."  Likewise, in *Bloomquist v. Brady*, 894 F. Supp. 108, 116 (W.D.N.Y. 1995), the District Court held that "A dismissal based on sovereign immunity is a decision on the merits, as it determines that a party has no cause of action or substantive right to recover against the United States."[5]  In *Morgan v. Perez*, Docket No. 18-CV-2994 (MKB), 2018 U.S. Dist. LEXIS 204270, at *4 (E.D.N.Y. Nov. 30, 2018) and in *Bryant v. United States*, 71 F. Supp. 2d 233, 237 (S.D.N.Y. 1999) both District Courts held that a dismissal for prosecutorial immunity was a final judgment on the merits for *res judicata* purposes.

Here, to the extent that in the First/Second consolidated Lawsuit some of Plaintiff's claims were dismissed based on sovereign immunity, those same claims against DRS should be dismissed on the merits in this current action based on *res judicata*.  Plaintiff is barred from relitigating the same claims against DRS that were previously dismissed.

> **ii.    COLLATERAL ESTOPPEL BARS RELITIGATION OF ISSUES PREVIOUSLY LITIGATED IN THE CONSOLIDATED ACTION**

The plaintiff's complaint also is appropriately dismissed under collateral estoppel, also known as issue preclusion, because the issues plaintiff presented against DRS in this complaint were previously litigated and decided by the District Court in the First/Second consolidated Lawsuit.

Collateral estoppel differs from *res judicata* in that collateral estoppel generally serves to preclude re-litigation of factual and legal *issues*, as opposed to claims, that were decided in the previous matter. Under collateral estoppel, "once a court has decided an issue of fact or law

---

[5]    At least one District Court held that sovereign immunity implicates subject matter jurisdiction, and that a dismissal for immunity was not on the merits. *Berman v. Turecki*, 885 F. Supp. 528, 536 (S.D.N.Y. 1995) (considering sovereign immunity as matter of subject matter jurisdiction).

necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L. Ed. 2d 308 (1980) (citations omitted).

"It is well established that federal law on collateral estoppel applies to determine the preclusive effect of a prior federal judgment." *Purdy v. Zeldes,* 337 F.3d 253, 258 n. 5 (2d Cir. 2003). The Supreme Court has eliminated the requirement of mutuality in applying collateral estoppel to bar relitigation of issues decided earlier in federal court suits and has allowed a litigant who was not a party to a federal case to use collateral estoppel "offensively" in a new federal suit against the party who lost on the decided issue in the first case.  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S. Ct. 645, 58 L.Ed.2d 552 (1979).  It is the party to be bound who must have been a party to the prior federal suit. *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012).

In the present case, the plaintiff is raising the same issues against DRS that were previously litigated in the consolidated action, which was decided in 2001 on the merits against him.  Specifically, he claims in the current suit that employment termination, conspiracy, forgery, breach of contract/agreement, and blacklisting.   In the consolidated actions from 1998 and 2000, he raised some of the same issues.   However, the plaintiff now claims that the 1994 settlement agreement was forged, that the DRS and the OAG conspired to breach the agreement and not pay $110, 000 toward his back child support, that he was blacklisted because he failed to obtain employment from other employees was interfered with despite his education, and that the OAG interfered with his law school LSAT scores for exposing unlawful practices at DRS. Because the issues against DRS in the consolidated actions from 1998 and 2000 were already decided in the prior action, collateral estoppel precludes the plaintiff from relitigating these issues in the present action.

iii.    STATUTE OF LIMITATIONS

a.    **Allegations Fall Largely Outside the Applicable Statutes of Limitations**

The allegations in a complaint show that the claims are barred by the applicable statutes of limitations and are subject to dismissal for failure to state a claim under Rule 12(b)(6).  Jones v. Bock, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted . . . .").  Here, many or most of Plaintiff's claims are subject to dismissal on this basis.  It is clear on the face of the complaint that much of the alleged wrongful conduct about which Plaintiff complains occurred in or between August 29, 1994 and May 5, 1999, i.e., between twenty-seven and twenty-two years prior to the filing of the complaint.  None of the claims in this case have statutes of limitations that stretch that far.

All of the Plaintiff's constitutional claims would be subject to a three-year statute of limitations.  "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal quotation marks omitted).  For constitutional claims arising in Connecticut brought against individuals under 42 U.S.C. § 1983, time limitation is governed by Connecticut's general statute of limitations for torts, Conn. Gen. Stat. § 52-577.  *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994).  And that statute prohibits claims brought "but within three years

from the date of the act or omission complained of."  Conn. Gen. Stat. § 52-577.  Although this is an action against state agencies OAG and DRS, and is therefore subject to dismissal for all the other stated reasons above, to the extent that the court deems it necessary to reach this issue because the Plaintiff alleges claims against "members" of the OAG and DRS, the three-year limitations period should apply to the constitutional claims here similar to how it applies to constitutional claims brought under § 1983.  Therefore, any constitutional claim that is more than three years old from the date of this action is barred.

On July 16, 2019, prior to the filing of this Third Complaint, the plaintiff filed identical CHRO complaints against the DRS and the OAG alleging retaliatory discrimination because of previous opposition to discriminatory conduct.  Specifically, plaintiff alleged the retaliatory conduct was in the form of obstruction and interference with him obtaining employment with other employers and that both the DRS and the OAG "secretly interfered with his applications." *See* CHRO complaints No.  2010013/EEOC No. 16A201901595 and 2010014/ EEOC No. 16A201901596.  On November 1, 2019, the CHRO dismissed both complaints because the complaints failed to state a claim for relief because they were filed outside "180 days of the date of the alleged act of discrimination."   *See* CHRO complaints No.  2010013 and 2010014, Case Assessment Reviews.  In its dismissal of both complaints, CHRO found that the complaints "[do] not state when the alleged retaliation by the Respondent office took place."  Id.

Additionally, CHRO held, in dismissing both complaints, that Parmlee alleged that the retaliation was because he filed a 1999 discrimination complaint and that while there is no "definitive date after which retaliation is not possible, usually matters occurring more than two years later are outside the timeframe for retaliation."  Id. *citing Vale v. City of New Haven*, 197 F. Supp. 3d 389, 404-5(D.Conn. 2016).  CHRO held that "[t]wenty years is well outside of this

timeframe." *See* CHRO complaints No. 2010013 and 2010014, Case Assessment Reviews. Therefore, CHRO dismissed both complaints, finding that Parmlee "did not allege any facts that would support a finding that the Respondent[s] engaged in retaliatory conduct." Id. On October 14, 2020, the EEOC dismissed both charges filed (No. 16A201901595 & 16A201901596) and closed its files holding that they "adopted the findings of the state or local fair employment practices agency that investigated this charge." *See* Complaint, attached EEOC Dismissal and Notice of Rights, No. 16A201901595[6].

Furthermore, the EEOC Dismissal and Notice of Rights ("Notice") instructs the plaintiff that he "must file a lawsuit against the respondent(s) named in the charge within 90 days of the date [he] receives [the] Notice" Id. Plaintiff fails to allege the date that he received the Notice, which is dated "October 14, 2020" as the date it was mailed to the plaintiff. A very reasonable inference could/should be made that plaintiff received the Notice ninety (90) days prior to September 29, 2021, which is the date he filed this Third Lawsuit.

In this current complaint, filed on September 29, 2021, no definitive date is given as to when the OAG allegedly retaliated against the plaintiff in conspiring to breach the 1994 settlement agreement by altering the terms and conspiring with DRS to not pay $110,000 towards his back child support. Nor does plaintiff give a definitive date on when the OAG and DRS allegedly blacklisted him and interfered with his ability to obtain employment from other outside employers. Based on the CHRO dismissal, these allegations likely stemmed from the same facts and occurrences alleged in his 1999 complaint, which has been dismissed via summary judgment in favor of DRS.

---

[6]   The OAG did not receive a copy of the EEOC Dismissal and Notice of Rights for No. 16A201901596. A reasonable inference should be made that the same result occurred as with the identical claim against DRS in No. 16A201901595).

As with any claim he makes against DRS or the OAG, he is well past the three-year statute of limitations and therefore, plaintiff fails to state any claim upon which relief may be granted because the statute of limitations bars any claim he makes here.

### b. PLAINTIFF'S §1983 CLAIMS PRIOR TO SEPTEMBER 29, 2018 ARE TIME BARRED

The Complaint filed September 29, 2021, asserts a claim under 42 U.S.C. § 1983 against "members" of the OAG and co-conspirators" at DRS.  (Complaint, pgs. 2, §2, 35).  Because the applicable statute of limitations for a § 1983 claim is three years, any claims regarding acts that occurred prior to September 29, 2021 clearly are untimely.

In particular, the following of Plaintiff's allegations raised in the instant Complaint are untimely for § 1983:  the 1994 settlement agreement was forged, that the DRS and the OAG conspired to breach the agreement and not pay $110, 000 toward his back child support, that he was blacklisted because he failed to obtain employment from other employees was interfered with despite his education, and that the OAG interfered with his law school LSAT scores for exposing unlawful practices at DRS.

Statutes of limitations "protect interests in reliance and repose, guard against stale demands, and limit the circumstances in which a reviewing court can grant relief…" *In re Enter. Mortgage Acceptance Co., LLC Sec. Litig. v. Enterprise Mortg. Acceptance Co.*, 391 F.3d 401, 409 (2d Cir.2004) (internal citations and quotation marks omitted)). Because "Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations." *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994). According to the Supreme Court, "§ 1983 claims are best characterized as personal injury actions." *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). The appropriate statute of limitations is therefore the state's general or residual statute of limitations for personal injury claims. *Owens v. Okure*, 488 U.S.

235, 249-250 (1989). Because Connecticut's statute of limitations for personal injury claims is three years; *see* Conn. Gen. Stat. § 52-577; any § 1983 claim brought more than three years after the cause of action accrued is barred. *Lounsbury*, 25 F.3d at 134.

Although state law determines the applicable limitations period, "[f]ederal law governs the question of when a federal claim accrues." *Morse v. Univ. of VT*, 973 F.2d 122, 125 (2d Cir. 1992). "In analyzing the timing of accrual in the context of discrimination claims, the Supreme Court has instructed that 'the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.'" Id. (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)). A cause of action accrues under § 1983 "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Golino v. City of New Haven*, 761 F. Supp. 962, 965 (D. Conn.), *aff'd* 950 F.2d 864 (2d Cir. 1991), *cert. denied*, 505 U.S. 1221 (1992).

Here, it is undisputed that the time of the alleged discriminatory acts began in 1994. (Complaint). It is also beyond cavil that the current Complaint, which seeks damages based on allegations that the 1994 settlement agreement was forged, that the DRS and the OAG conspired to breach the agreement and not pay $110,000 toward his back child support, that he was blacklisted because he failed to obtain employment from other employees was interfered with despite his education, and that the OAG interfered with his law school LSAT scores for exposing unlawful practices at DRS, was filed on September 29,2021, well after the expiration of the three-year limitation period.

In fact, any of plaintiff's potential claims prior to September 29, 2018 beyond the three-year statute of limitations and time barred. It is well-established that, in Connecticut, the statute of limitations for §1983 actions is three years. See e.g., *Bhatia v. Connecticut Dep't of Children*

& *Families*, 317 F. Appx. 51, 52 (2d Cir. 2009), citing Conn. Gen. Stat. §52–577; *Walker v.*

*Jastremski*, 430 F.3d 560, 562 (2d Cir.2005), cert. denied, 547 U.S. 1101 (2006). "Section 1983

actions arising in Connecticut, like this one, are governed by the three-year limitations period set

forth in Conn. Gen. Stat. §52-577." *Harnage v. Torres*, 665 F. App'x 82, 83 (2d Cir. 2016).

Plaintiff's Complaint was filed on September 29, 2021. Therefore, all claims arising before

September 29, 2018 are time barred.

### iv.   THE ELEVENTH AMENDMENT SOVEREIGN IMMUNITY BARS THE §1983 CLAIMS AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITY

The Eleventh Amendment Sovereign Immunity bars many of the claims and relief

sought.  Plaintiff's demand for monetary damages, including punitive damages against the State

of Connecticut OAG and DRS is not authorized by law and is barred by sovereign immunity.

The official capacity claims against "members" of the OAG and DRS, are barred by the Eleventh

Amendment and sovereign immunity.  Likewise, the state tort law claims of conspiracy forgery,

fraud, breach of contract/agreement., interference with law school test, may not be brought in

federal court, even against the official capacity Defendants.

The Plaintiff asserts claims pursuant to 42 U.S.C. §1983 against Defendants, the State of

Connecticut's OAG, "members" of the OAG,  and DRS in their official capacity seeking

monetary damages including punitive damages.  These claims are all barred by the Eleventh

Amendment and, therefore, must be dismissed for lack of subject matter jurisdiction. The

Eleventh Amendment bars suit against a State in federal court regardless of the relief sought.

*Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985). The immunity extends to "state agents and

state instrumentalities that are, effectively, arms of a state," *Mary Jo C. v. NY State & Local Ret.*

*Sys.*, 707 F.3d 144, 152 (2d. Cir. 2013), as well as state officers sued in their official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Eleventh Amendment bars lawsuits against states absent consent from the state or abrogation of the immunity by Congress under §5 of the Fourteenth Amendment. *See Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011)(holding that "absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State"); *See also Szymonik v. Connecticut*, 2019 U.S. Dist. LEXIS 6721 *17 (2019) *aff'd by Szymonik v. Connecticut,* U.S. App. LEXIS 10504 (2D Cir. Conn., Apr. 3, 2020).   These claims are barred by sovereign immunity and are, as a matter of law, directed at the respective state agencies, OAG and DRS, which are not "person[s]" for the purposes of 42 U.S.C. §1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (holding that the Eleventh Amendment also precludes claims against state officials in their official capacity for damages).  In enacting §1983, Congress did not abrogate the sovereign immunity of the states under the Eleventh Amendment.  *Quern v. Jordan*, 440 U.S. 332, 341–42 (1979).

The Eleventh Amendment immunity to which a state official is entitled in a §1983 action depends on the capacity in which the official is sued – *i.e.*, whether that official is being sued in his or her official or individual capacity.  *Hafer v. Melo*, 502 U.S. 21, 27 (1991). If a §1983 suit against a state official in his or her *official* capacity seeks *money damages*, the state is deemed to be the real party in interest because an award of damages would be paid from the state treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994). Under such circumstances, the action is deemed to be against the State so that the State official is entitled to Eleventh Amendment immunity.  *See Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial

party in interest and is entitled to invoke its sovereign immunity from suit even though individual

officials are nominal defendants."). It is thus well settled that neither states, nor state officials

acting in their official capacity, are "persons" subject to liability under §1983.  *Will v. Mich.

Dep't of State Police*, 491 U.S. 58, 71 (1989).

Immunity can only be abrogated in a few circumstances. Although the Supreme Court

has recognized a limited exception to Eleventh Amendment immunity when state officers are

sued for prospective injunctive relief based on allegations of a federal constitutional violation,

*Pennhurst*, 465 at 121; *Ex Parte Young*, 209 U.S. 123 (1908), this exception does not extend to

monetary damages or any other form of retroactive relief. *Pennhurst*, 465 U.S. at 105. Thus,

"suits against states and their officials seeking damages for past injuries are firmly foreclosed by

the Eleventh Amendment." *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000).  With respect to

a state or state agency, sovereign immunity can by waived by unequivocally expressed consent

by the state or the unequivocal expression by Congress, pursuant to the Fourteenth Amendment,

to abrogate a state's immunity. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99

(1984). Additionally, under *Ex Parte Young*, 209 U.S. 123 (1908), a "plaintiff may avoid the

Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the

state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of

federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*,

482 F.3d 612, 618 (2d Cir. 2007) (citation omitted).

However, an action brought pursuant to 42 U.S.C. § 1983 does not override a state's

Eleventh Amendment immunity.  *Quern v. Jordan,* 440 U.S. 332, 342, 99 S. Ct. 1139, 59

L.Ed.2d 358 (1979).  42 U.S.C. § 1983 provides that any "person" acting under color of state law

in violation of another's federal constitutional rights is liable to the injured party.  The Supreme

Court has held that government entities, including states and state officials, are NOT "persons" within the meaning of § 1983.  See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

As Connecticut has not waived, and Congress has not abrogated sovereign immunity, the claims against Defendants OAG and DRS, in their official capacities, pursuant to state law, are barred by the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that 42 U.S.C. § 1983 does not override states' Eleventh Amendment immunity). Accordingly, the Eleventh Amendment compels dismissal of the claims for relief against Defendants OAG and DRS, in their official capacities.

**v.   "MEMBERS" OF THE OAG ARE ENTITLED TO ABSOLUTE QUASI-JUDICIAL IMMUNITY**

The "members" of the OAG, in their official capacities, are entitled to absolute quasi-judicial immunity from any liability the Plaintiff claims against them. While the plaintiff fails to name any individual employee of the OAG as a defendant, he does allege that "members of the [OAG] altered the content of the agreement."  (Complaint, ¶2, pg.2).  Additionally, plaintiff alleges, in this current complaint, filed on September 29, 2021, the OAG allegedly retaliated against the plaintiff in conspiring to breach the 1994 settlement agreement by committing forgery in altering the terms and conspiring with DRS to not pay $110,000 towards his back child support and the OAG and DRS allegedly blacklisted him and interfered with his ability to obtain employment from other outside employers.  *Id.* at pgs. 36, 38, and 40.  Plaintiff further alleges that the defendants were involved in blacklisting him to "[prevent] him from finding gainful employment" and "interfered with his test score results after taking the LSAT on several occasions and completing law school."  Id at 40.

In *Szymonik v. Connecticut,* the plaintiff's claims against the Connecticut Attorney General were dismissed "because he [was] entitled to absolute quasi-judicial immunity for the conduct alleged in the complaint."   *Szymonik v. Connecticut*, 2019 U.S. Dist. LEXIS 6721 *17 (2019) *aff'd by Szymonik v. Connecticut,* U.S. App. LEXIS 10504 (2D Cir. Conn., Apr. 3, 2020). The Szymoniks "allegedly contacted the Attorney General to request that his office intervene on their behalf in the family court proceeding," which he refused to do so. *Id.* at *4.  The Szymoniks allege that the Connecticut Attorney General's "refusal to intervene in their marriage dissolutions" was a "[violation] of their rights."  Id. at **2, 21.

The basis for this court's dismissal of the Szymoniks claims against the Connecticut Attorney General in *Szymonik v. Connecticut* readily apply in this case as well though the facts are slightly different.  This court's decision to dismiss claims against the Connecticut Attorney General were grounded in the Second Circuits holdings on absolute immunity wherein the court held that "[A]bsolute immunity has been extended to individuals performing duties 'closely associated with the judicial process.'" *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir. 1994*)*.  In *Young,* the Second Circuit recognized six factors that are "characteristic of the judicial process: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of the error on appeal."  Id.

Likewise, the "members" of the OAG are entitled to absolute quasi-judicial immunity from all claims that the Plaintiff alleges against them because all of the conduct that the Plaintiff alleges against the "members" of the OAG is related to their legal representation of the defendant

DRS with regards to the 1994 settlement agreement and any actions taken post-settlement agreement with regards to the payments made to his back child support.  Undoubtedly, the "members" of the OAG legal representation of DRS is "characteristic of the judicial process" because this attorney-client relationship meets all six *Young* factors, with no exception that plaintiff alleges or could allege to overcome the absolute quasi-judicial immunity that the "members" of the OAG are afforded based on the circumstances in this case.

Additionally, though plaintiff alleges that the "members" of the OAG blacklisted him and interfered with his ability to obtain employment from other outside employers, he fails to allege any evidentiary support for such claims, which can only be deemed to be conclusory at best.  For the reasons stated above, this Court lacks subject matter jurisdiction to adjudicate plaintiff's claims against "members" of the OAG because they are entitled to absolute quasi-judicial immunity from such claims. As such, all claims against "members" of the OAG should be dismissed.

### B.  PLAINTIFF FAILED TO STATE ANY CLAIMS UPON WHICH RELIEF MAY GRANTED

#### i.   PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AS TO THE BREACH OF CONTRACT/SETTLEMENT AGREEMENT

It is not altogether clear what specific legal theories are asserted in this complaint. Plaintiff alleges violation, under §1983 and Title VII due to claims of having been subjected to a hostile work environment, discrimination, and retaliation, conspiracy, forgery, interference with LSAT law school test exam, and breach of contract/agreement but does not separate these claims into different counts.  However, as addressed above, most of Plaintiff's claims are barred by *res judicata*.  In addition, Plaintiff asserts several claims that are either time barred or unexhausted claims.  As to the remaining claims that are not either 1) barred by *res judicata* or 2) time barred,

Plaintiff has failed to exhaust his administrative remedies as to his breach of contract/agreement claim.

However, in his current complaint, plaintiff alleges that the DRS breached the 1994 settlement agreement because they failed to directly pay him $110,000 to pay towards to his back child support.  This breach of contract/agreement claim should be dismissed for failing to exhaust his administrative remedies with the Connecticut Claims Commissioner.

The Connecticut General Assembly has authorized the bringing of claims against the State pursuant to Connecticut General Statutes § 4-141 *et. Seq*.  State statute authorizes the Claims Commissioner to hear and determine claims, with certain parameters and exceptions. Conn. Gen. Stat. § 4-158 authorizes the Commissioner to pay claims.  Conn. Gen. Stat.   § 4-141 defines a "just claim" as a "claim which in equity and justice the state should pay provided the state has caused damage or injury or has received a benefit."

For authorization to sue the State, the Commissioner must deem it to be just and equitable and find, in his opinion, that the claim presents an issue of law or fact under which the State, were it a private person, could be liable. Conn. Gen. Stat. § 4-160.   Additionally, "it is incumbent on a plaintiff to allege some recognizable cause of action in his complaint."  *Brill v. Ulrey*, 159 Conn. 371, 374 (1970)(citing *Stavnezer v. Sage-Allen & Co.*, 146 Conn. 460, 461 (1959).  Article Eleventh, Sec. 4 of the Connecticut Constitution provides that:  "Claims against the state shall be resolved in such a manner as may be provided by law."  The legislation implementing this directive is set forth in Chapter 53 of the General Statutes.  These provisions constitute a limited waiver of the sovereign immunity of the state.  It is a well-established principle that statutes in derogation of sovereign immunity should be strictly construed. *DeFonce Construction Corporation v. State*, 198 Conn. 520, 524, (1985);  *Berger, Lehman*

*Associates, Inc. v. State*, 178 Conn. 352, 355-56 (1979).  Where there is any doubt about a statute's meaning or intent, it is given the effect which makes the least rather than the most change in sovereign immunity.  *White v. Burns*, 213 Conn. 307, 312 (1990).

Here, plaintiff alleges that the State of Connecticut, via defendant DRS, should have paid him $150,000 per the terms of the 1994 settlement agreement between the parties and that he directly received $40,000, which left $110,000 unpaid.  (Complaint).  Plaintiff claims that the failure to pay the $110, 000 caused him injury in that the alleged failure to pay the $110, 000 lead him to be imprisoned for failing to pay back child support that he still owes, that DRS intended to the "non-payment of child support" to be used against him, and that this was done to "cause him to suffer."  (Complaint, pgs. 23-24, 34-35, and 38).

However, plaintiff has failed to allege that he exhausted his administrative remedies with the Claims Commissioner for the alleged breach of contract/agreement claim and alleged failure to pay him $110,000 so that he could pay his back child support.  Furthermore, plaintiff failed to exhaust his administrative remedies with the Claims Commissioner for the alleged injuries he alleges he suffered due to the failure to pay.  Moreover, plaintiff has failed to allege that he obtained permission to sue the State for the alleged non-payment of the $110,000 as agreed by DRS in the 1994 settlement agreement.

Therefore, plaintiff failed to exhaust his administrative remedy with regards to his claim of breach of contract/agreement pursuant to the 1994 settlement agreement and as such, this claim should be dismissed.

### ii.    SUPPLEMENTAL STATE LAW CLAIMS

For all the foregoing reasons, the defendants' Motion to Dismiss should be granted on all the plaintiff's federal claims and consequently, this Court should decline jurisdiction over the

state law claims, including, but not limited to, plaintiff's claims for the breach of

contract/agreement, tortious interference with his attempts to gain employment with other

employers, and tortious interference with his law school test scores.  *See Monsky v. Moraghan*,

127 F.3d 243, 247 (2d Cir. 1997); *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (Having

dismissed the plaintiff's underlying federal claims, we also dismiss her supplemental state claims

of assault, unlawful imprisonment, and malicious prosecution); *A. Audi & Sons v. Plainville*, 862

F. Supp. 737, 745 (D. Conn. 1994) (dismissal of claim arising under federal law obliterated

court's subject matter jurisdiction over state law claims).  Or, in the alternative, dismissed for a

lack of jurisdiction.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130,

1139, 16 L.Ed. 218 (1966) (if federal claims are dismissed before trial, the state claims should

also be dismissed.).  *Id*. 383 U.S. at 726-27, 86 S.Ct. at 1138.  *See also*, *Carnegie-Mellon*

*University v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); 3A Moore's

Federal Practice ¶ 18.02 {4.2} at 18-22; *Pitchell v. Callan*, 13 F.3d 545 (2d Cir. 1994).  The

Second Circuit has also held that where the federal claims are dismissed prior to trial, declining

to exercise jurisdiction over the state claims is the preferred course of action.  *See, e.g*., *DiLaura*

*v. Power Authority of New York,* 982 F.2d 73 (2d Cir. 1992).

### iii. PLAINTIFF'S REQUEST FOR A JURY TRIAL REGARDING HIS CLAIM FOR EQUITABLE RELIEF MUST BE DISMISSED BECAUSE HE HAS NO RIGHT TO A JURY TRIAL FOR EQUITABLE RELIEF UNDER TITLE VII.

The Plaintiff's Complaint includes a request for a trial by jury.  (Complaint, §F, Pg. 5). This

court should dismiss Plaintiff's claim for a trial by jury as to what can be deemed his request for

back pay, front pay and other equitable relief.  In the Civil Rights Act of 1991, Congress created a

right to recover compensatory and punitive damages for certain violations of Title VII.  However,

it did not create a right to a jury trial on equitable claims.

The 1991 Act enhanced Title VII's remedial scheme for disparate treatment claims.  In addition to back pay and front pay, it authorized the recovery of compensatory and punitive damages in disparate treatment disputes, see 42 U.S.C. § 1981a(a)(1), and afforded a jury trial *where these additional remedies are sought*, see 42 U.S.C. § 1981a(c). *Robinson v. Metro– North Commuter R.R.,* 267 F.3d 147, 157 (2d Cir.2001) *abrogated on other grounds  Wal–Mart Stores, Inc. v. Dukes*, _ U.S.  _, 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011).   "Because a lost wage award-whether in the form of back pay or front pay-is an equitable remedy, a party is generally not entitled to a jury determination on the question." *Broadnax v. City of New Haven,* 415 F.3d 265 (2d Cir.2005); *TSE v. UBS Financial Services, Inc*., 568 F.Supp.2d 274 (SDNY 2008).

Accordingly, Plaintiff does not have a right to have a jury decide his requests in this case for equitable relief under Title VII.  Accordingly, his request for a jury trial on such claims should be dismissed.

## VI.    __CONCLUSION__

For all the foregoing reasons, the Defendant respectfully moves that this Court grant the Defendant's Motion to Dismiss and dismiss the Plaintiff's Complaint in its entirety.  Further, the dismissal should be with prejudice because repleading would be futile

DEFENDANTS

WILLIAM TONG
ATTORNEY GENERAL


By:      _/s/ *Charlene W. Spencer*_____
              Charlene W. Spencer
              Assistant Attorney General
              165 Capitol Avenue, Suite 5000
              Hartford, CT 06106
              Tel:  (860) 808-5340
              Fax: (860) 808-5383
              E-mail: Charlene.Spencer@ct.gov
              Federal Bar # ct29676

## **CERTIFICATION**

I hereby certify that on December 27, 2021 a copy of the foregoing was filed electronically.  Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system. I further certify that a copy was sent by first class mail, postage prepaid to the following:


Richard T. Parmlee, Sr.
P.O. Box 261438
Hartford, CT 06126-1438


              _/s/ *Charlene W. Spencer*_____
              Charlene W. Spencer (#ct29676)
              Assistant Attorney General